UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:  19-CIV-20534-MORENO/LOUIS

LUIS BARRIOS,

     Plaintiff,

vs.

CARNIVAL CORPORATION,
d/b/a CARNIVAL CRUISE LINES,
a Panamanian Corporation,

     Defendant,

_____/

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant, Carnival Corporation d/b/a Carnival Cruise Line moves for summary judgment.

### Introduction

Luis Barrios ("Plaintiff") was a 57-year old passenger onboard the Carnival *Inspiration* with his husband, Patrick Brewer. Plaintiff and Mr. Brewer were celebrating their honeymoon. On the first day of a cruise, passengers report to assigned muster stations for the passenger safety briefing. This briefing addresses what passengers do in the unlikely event that there needs to be an emergency evacuation of the vessel.

While each passenger's Sail & Sign Card prominently displays their assigned muster station, Plaintiff and Mr. Brewer reported to the incorrect station. Specifically, they reported to Muster Station "E" located at the Candlelight Lounge, whereas they were assigned to nearby Muster Station "D."

CASE NO.: 19-CIV-20534-MORENO/LOUIS

Upon realizing that Plaintiff and Mr. Brewer were at the wrong muster station, a Carnival crewmember advised them that they needed to report to their proper station. While escorting Plaintiff and Mr. Brewer, they approached a small three-step staircase. After the crewmember descended the stairs ahead of Plaintiff and Mr. Brewer, she turned to offer her hand as assistance.

Unbeknownst to Carnival, Mr. Brewer suffered three strokes in the past, limiting his mobility and resulting in various physical limitations. As a result of these strokes, Mr. Brewer is easily distracted, and often loses his balance and falls sideways as a result. Here, in response to the crewmember's offer to assist, Mr. Brewer threw his hands into the air, lost his balance, and fell down the stairs bringing Plaintiff down with him.

Consistent with commonsense and Plaintiff's contractual obligation, he should have advised Carnival that Mr. Brewer required special accommodations. He did not. Plaintiff fell because Mr. Brewer had a history of strokes, reacted in an unexpected way to a crewmember's offer of assistance, and pulled Plaintiff to the ground. That Plaintiff fell due to Carnival's negligence is without support. Mr. Brewer's conduct is the sole proximate cause of Plaintiff's fall. Carnival is entitled to final summary judgment.

### Statement of Material Facts

1.    Plaintiff and his husband, Patrick Brewer, cruised onboard the Carnival *Inspiration* to celebrate their honeymoon. [DE 1] [Deposition of Plaintiff, pg. 17, attached as Exhibit 1].

2.    Prior to cruising, Plaintiff accepted Carnival's ticket contract on his behalf and for Mr. Brewer. [Ticket Contract Acceptance Report, attached as Exhibit 2; Deposition of Monica Borcegue at pgs. 112-13, attached as Exhibit 3].

3.    The ticket contract provides that:

The Guest warrants that he and those traveling with him are physically and emotionally fit to travel at the time of the embarkation, and further warrants that such Guests have no medical or emotional condition that would engaged any Guest or crewmembers or result in deviation of the voyage. Guests are encouraged to contact their treating physician to discuss their health concerns, including pregnancy, before traveling. (see Clause 5(b) below for pregnancy restrictions). Any Guest with special medical, physical or other needs requiring medical attention or special accommodation during the voyage is requested to notify Carnival in writing at the time of booking of such special need. Upon booking the cruise, Guests who have special needs are requested to contact Carnival's Guest Access Desk (305-599-2600 ext. 70025) to discuss the details of their special needs. Carnival recommends that any Guest who is not self-sufficient travel with a companion who shall take responsibility for any assistance needed during the voyage.

[Ticket Contract 5(a), attached as Exhibit 4].

4.      Mr. Brewer suffered three strokes prior to the cruise, and according to Plaintiff, "Mr. Brewer's movements and mobility are impaired." [Plaintiff's Answers to Carnival's Second Request for Interrogatories, attached as Exhibit 5]. When distracted, he loses his balance and "goes sideways." [Exh. 1 at pgs. 69-70]. "He's disabled." [Id. at pg. 17]. Neither Plaintiff nor Mr. Brewer advised Carnival of Mr. Brewer's condition.

5.      On the first day of the cruise, Plaintiff and Mr. Brewer participated in the mandatory passenger safety briefing (colloquially, the muster drill). While at the first muster station they reported to, their names were announced and they were advised that they reported to the incorrect station. [Exh. 1 pgs. 71-73].

6.      Every passenger's muster station assignment is detailed on their Sail & Sign Card. [Plaintiff's actual Sign & Sail Card, attached as Exhibit 6]. Even though this information is readily apparent, Carnival announces same over the loudspeaker prior to the guest safety briefing. [Passenger's Safety Briefing Announcement, attached as Exhibit 7]. During these announcements, Carnival also informs that; "For our passengers requiring special assistance we have a 'Special Needs' team."

7.     After realizing they were at the incorrect muster station, crewmember, Melissa Quemado, approached Plaintiff and Mr. Brewer to lead them to their proper station. Neither Plaintiff nor Mr. Brewer advised the crewmember of Mr. Brewer's condition. [Id.].

8.     While following the crewmember out of the improper station, Plaintiff held Mr. Brewer's right arm as they walked behind. [Id.]. They followed the crewmember for about twenty feet before reaching a few steps. [Id. at pg. 82].

9.     After the crewmember reached the steps, and before Plaintiff and Mr. Brewer began to descend, the crewmember turned around to assist. [Id. at pg. 84; 86]. As Plaintiff, recalls, "the girl was trying to help him down the steps." [Id. at pg. 74].

10.    Unexpected to Plaintiff, Mr. Brewer lost control. As Plaintiff recalls, "I did not expect for him to lose control right there and he took me down with him flying the three steps and we both landed on the floor and on the other side of the steps." [Id. at 74].

11.    After falling, Plaintiff stood up and helped Mr. Brewer as well. [Id. at pg. 92]. They did not need medical care. [Exh. 3 at pg. 51].

12.    In Plaintiff's opinion, "[m]y fall was caused by Patrick because Melissa caused his fall." [Id. at pgs. 125-26].

## Memorandum of Law

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See* FED. R. CIV. P. 56(c). That there are "some alleged factual disputes between the parties will not defeat an otherwise properly supported motion for summary judgment; the

requirement is that there be no *genuine* issue of *material* fact." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original).

Once the moving party demonstrates a lack of evidence by the non-movant on an issue which he has the burden of proof, the non-movant must affirmatively demonstrate a genuine factual dispute to avoid summary judgment. *Info. Sys. & Network Corp. v. City of Atlanta*, 281 F.3d 1220 (11th Cir. 2002). The party opposing summary judgment may not rely upon the pleadings or mere denials of the allegations contained in a motion for summary judgment. The non-movant must adduce some evidence showing that material facts are at issue on a matter that he will bear the burden at trial. *Celotex Corp. v. Catrett*, 277 U.S. 317, 324 (1986). "[T]he plain language of Rule 56 mandates entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial." *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1292 (11th Cir. 2012).

General maritime law applies to cases, like this one, alleging torts committed onboard ships sailing in navigable waters. *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625 (1959). Under general maritime law, a shipowner owes its passengers a duty of reasonable care under the circumstances. *Id*. It is well-established that a cruise line is not liable to passengers as an insurer; there must be some failure to exercise due care before liability can be imposed. *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1334 (11th Cir. 1984).

To establish negligence, here, Plaintiff must prove that: (1) Carnival had a duty to protect Plaintiff from a particular injury; (2) Carnival breached that duty; (3) the breach actually and proximately caused Plaintiff's injury; and (4) Plaintiff suffered actual harm. *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir. 2012).

To find that Carnival breached its duty, Carnival must have actual or constructive knowledge of the specific risk-creating. *Keefe v. Bahama Cruise Lines, Inc.*, 867 F.2d 1318, 1327 (11th Cir. 1989); *Pizzino v. NCL (Bahamas) Ltd.*, 709 F. App'x 563, 565 (11th Cir. 2017). Specifically, Plaintiff must show that 1) a dangerous condition existed; and 2) Carnival should have known that the dangerous condition existed, and enough time passed that corrective action should have been taken. *See Keefe*, 867 F.2d at 1322; *Klein v. Regent*, No. 16-21981, 2017 WL 3405531, *2 (S.D. Fla. Aug. 7, 2017); *Adams v. Carnival*, No. 08-22465, 2009 WL 4907547, at *3 (S.D. Fla. Sept, 29, 2009).

## I.       No Dangerous Condition Existed

Plaintiff testified that Mr. Brewer caused him to fall, and alleged that Carnival crewmember, Melissa Quemado, caused Mr. Brewer to lose his balance. [Id. at pgs. 125-26]. Although not mentioned by Plaintiff during his deposition, the Complaint alleges that Carnival's crowd control policies, and specifically those pertaining to the passenger safety briefing, proximately caused his fall. [DE 1].

As this Court recognized in *Klein*, "one must not presume that because an accident occurred, a dangerous condition existed." *Klein*, 2017 WL at *3. The plaintiff must prove there was a dangerous condition. *Id.* Here, Carnival did not cause Mr.  Brewer's fall, and there is no evidence that its procedures guiding the safety briefing process were unreasonable.

## II.      Carnival Was Not on Notice that Mr. Brewer Was Disabled and Prone to Falling

Plaintiff admits that Mr. Brewer caused his fall, but blames crewmember Quemado for Mr. Brewer's causal conduct. [Exh. 1. at pgs. 125-26]. Commonsensically, Plaintiff blames Mr. Brewer for his fall because when Mr. Brewer threw his arms up into the air, Mr. Brewer lost his balance and "[Plaintiff] went down with him." [Id. at pgs. 85-86]. Further, the Parties agree that

Mr. Brewer lost his balance because he is atypically sensitive and easily distracted due to his history of strokes. "He's disabled." [Id. at pg. 17-18]. Specifically, he is prone to losing his balance and falling "sideways." [Exh. 1 at pgs. 17, 69-70].

Carnival's duty here is measured against a standard of objective reasonable care under the circumstances. *Rodriguez v. Akal Sec., Inc.*, 2013 WL 435947, *3 (S.D. Fla. Feb. 4, 2013). The defendant's duty of care does not increase for each particular person; the defendant is only required to act in an objectively reasonable way based upon information known to it. *Garcia v. United States*, 2010 WL 2977611, *20 n. 10 (D.N.M. June 15, 2010). "The obviousness of a danger and adequacy of a warning are determined by a 'reasonable person' standard, rather than on each particular plaintiff's subjective appreciation of the danger. Individual subjective perceptions of the injured party are irrelevant in the determination of whether a duty to warn existed." *John Morrell & Co. v. Royal Caribbean,* 534 F. Supp. 2d 1345, 1351 (S.D. Fla. 2008); *see also Magazine v. Royal Caribbean Cruises, Ltd.*, 2014 WL 1274130 (S.D. Fla. 2014). As a result, the "eggshell-skull" doctrine—the defendant "takes plaintiffs as he finds them"—applies only to damages. It has no bearing on issues of duty or causation. *Garcia*, 2010 WL 2977611.

Had Plaintiff or Mr. Brewer advised Carnival or Ms. Quemado that Mr. Brewer needed special accommodation, Carnival would have provided same. [Exh. 3 at pgs.113-14] [Exh. 7]. [Muster Station Personnel Lesson Plan at slide 43, attached as Exhibit 8]. Neither Plaintiff nor Mr. Brewer advised Carnival or Ms. Quemado of Mr. Brewer's condition. [Exh. 1]. When Ms. Quemado lent a hand to assist with the stairs, she was not on notice of Mr. Brewer's condition. Her conduct was reasonable.

Accepting Plaintiff's theory of liability would hold that the cruise line is the absolute insurer of passenger safety, required to prevent any accident based upon any passenger's unique

medical condition. The law does not require this. Carnival need only act in an objectively reasonable manner. *See Vaughn v. Nissan Motor Corp.*, 77 F.3d 736 (4th Cir. 1996) ("A circular saw would be quite dangerous if used by a blind man, but a properly designed and manufactured saw is safe and useful to an ordinary person. Consequently, circular saws are not *per se* defective, notwithstanding a fingerless blind man here and there."). Here, offering Mr. Brewer a hand as he approached a small staircase was reasonable.

### III.    It Was Unforeseeable That Mr. Brewer Would React Erratically

Proximate cause and foreseeability are not always jury questions. *Courtney v. Am. Oil Co.*, 220 So. 2d 675 (Fla. Dist. Ct. App. 1968). An act can so clearly not be a foreseeable consequence, that a court may decide the proximate cause issue as a matter of law. *Id.* That Ms. Quemado's offer of assistance would cause Mr. Brewer to throw his hands haphazardly into the air was unforeseeable.

Ms. Quemado's offer of assistance was an act of common courtesy. As Plaintiff and Mr. Brewer already walked approximately twenty feet to the stairs, [Exh. 1 at pg. 82], it was unforeseeable that Mr. Brewer had a serious physical disability attributable to a history of strokes. There was no reason to anticipate Mr. Brewer's erratic response to an offer of help.

Plaintiff admits that Mr. Brewer's condition caused Plaintiff to fall – a condition that Carnival was not on notice. Carnival is entitled to summary judgment.

### IV.    Carnival's Guest Safety Briefing Procedures Did Not Cause Plaintiff's Fall

While Plaintiff unequivocally blames Mr. Brewer for his fall, the Complaint [DE 1] inappositely blames Carnival's crowd control and/or the guest safety briefing process. Upon embarking onto a Carnival vessel for a voyage, passengers are required to partake in the guest safety briefing, wherein they report to their assigned muster station. [Exh. 7]. Each passenger's

muster station assignment is written on their Sail & Sign Card, which they obtain prior to the guest safety briefing. [Exh. 6]. The locations of each muster station are posted within each passenger cabin, and crewmembers remain available throughout the vessel to assist. [Exh. 3 at pg. 34, 60].

At the assigned muster station, passengers are advised of instructions in the unlikely event that they need to evacuate the vessel during an emergency. [Exh. 7]. In order to prepare for an orderly and efficient evacuation, passengers must report to the proper muster station. If a passenger needs special accommodation, Carnival's Special Needs Team is available. [Exh. 7]. In fact, during the guest safety briefing, passengers needing of special accommodation are provided a separate area from other passengers. [Id. at pg. 119-20].

There is no evidence that there was anything unreasonable about Carnival's guest safety briefing practices.

## Conclusion

Carnival did not proximately cause Plaintiff to fall. By Plaintiff's own admission, Mr. Brewer caused him to fall. The procedures governing the guest safety briefing are reasonable. No dangerous condition, attributable to Carnival, existed.

Carnival is entitled to summary judgment.

Respectfully submitted,

MASE MEBANE & BRIGGS, P.A.
*Attorneys for Defendant*
2601 South Bayshore Drive, Suite 800
Miami, Florida  33133
Telephone:  (305) 377-3770
Facsimile:   (305) 377-0080


By:___ */s/ Adam Finkel*_____
       THOMAS A. BRIGGS
       Florida Bar No. 663034

CASE NO.:  19-CIV-20534-MORENO/LOUIS

tbriggs@maselaw.com
rcoakley@maselaw.com
ADAM FINKEL
Florida Bar No. 101505
afinkel@maselaw.com
carbelaez@maselaw.com
filing@maselaw.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by electronic mail and U.S. postal mail on July 23, 2019 on all parties of record on the Service List below.


*/s/ Adam Finkel*
ADAM FINKEL

## SERVICE LIST

Luis Barrios
*Plaintiff*
P.O. Box 37892
Phoenix, AZ 85069
Email: lab85019@chinosoffice.com

19521//409